EL PASO SOUTHWESTERN RAILWAY COMPANY v. E. A. BARRETT.

Decided April 3, 1907.

**1.—Suppression of Deposition—Act of 1905 Construed.**

Under the provisions of article 2284 of the Revised Statutes, as amended by the Act of 1905, the right to suppress a deposition *at any time* exists only when any of the provisions of that particular article has been violated by a party to the suit, and that fact is made to appear *aliunde* the deposition.

**2.—Same—Notice of Taking Deposition.**

The requirement under the Act of 1905 that the notary taking depositions shall give at least five days' notice to the parties is found in article 2282 as

amended by that act, and not in article 2284. Hence a motion to suppress a deposition because of the failure of the officer to give such notice can not be made at any time, but is controlled by the unamended article 2289, Revised Statutes, and must be made at the first term after the deposition is filed in court.

### 3.—Application for Continuance—Insufficient Diligence.

Where counsel for defendant made a waiver in writing, of time, service of copy, filing of interrogatories, issuance of commission, etc., and the depositions taken under said agreement were filed in the clerk's office on September 1, 1905, and such filing duly noted at the time on the proper docket, and said depositions were taken from the clerk's office by plaintiff's counsel on September 9, 1905, and receipted for on the proper docket, and the case was not called for trial until June 8, 1906, during which time the deposition remained in the possession of plaintiff's counsel, an application for continuance on the ground that defendant did not know of the existence of the deposition and required time to procure testimony to rebut the same, was properly overruled. The deposition tended to prove an issue clearly presented by the pleading and defendant should have prepared to meet it.

### 4.—New Trial—Newly Discovered Evidence.

When, during the progress of a trial, the importance of certain absent testimony is developed it is the duty of the party desiring such testimony to withdraw his announcement of ready for trial and ask for a continuance for the purpose of obtaining the testimony. Failing in this, a motion for new trial on the ground of newly discovered testimony is properly overruled.

### 5.—Unforeseen Accident—Proximate Consequences.

In a suit for personal injuries a charge requested by defendant to the effect that if the jury believed from the evidence that plaintiff's injuries resulted from an accident which could not have been foreseen by defendant by the use of ordinary care, they should return a verdict for defendant, was properly refused because the injurious, proximate and natural consequences of an act of negligence are always deemed to be foreseen.

### 6.—Personal Injury—Loss of Time—Pleading.

The loss of time consequent upon a personal injury may be proved without specific allegation of the same.

Appeal from the District Court of El Paso County. Tried below before Hon. J. M. Goggin.

*Patterson, Buchler & Woodson,* for appellant.—The court erred in not suppressing the deposition of Herbert Athons, but whether it did or not, the application for a continuance should have been granted as it was evident defendant did not know of the existence of said deposition and the court should have granted it time to procure testimony to meet the testimony of this witness. Grimes v. Watkins, 59 Texas, 133; Watts v. Holland, 56 Texas, 62; Hipp v. Bissell, 3 Texas, 18.

The court should have granted the motion for a new trial on the grounds set up therein as the testimony of P. C. Clark was discovered too late to be procured at the trial, and there was no lack of diligence on appellant's part in its efforts to procure said witness's testimony, and the testimony of the witness was most material in favor of the defendant. Texas & Pac. Ry. v. Barron, 78 Texas, 425; Texas & Pac. Ry. v. Casey, 52 Texas, 122; Galveston, H. & S. A. Ry. v. Bracken, 59 Texas, 71; Hagerty v. Scott, 10 Texas, 529; Allyn v. Willis, 65 Texas, 65; Standard Life Insurance Co. v. Askew, 11 Texas Civ. App., 60; Houston & T. C. Ry. v. Forsyth, 49 Texas, 171; Mitchell v. Bass, 26 Texas, 372;

Wolf v. Mahan, 57 Texas, 175; Buford v. Bostick, 50 Texas, 371; Chinn v. Taylor, 64 Texas, 387; Halliday v. Lambright, 68 S. W. Rep. 713.

*Beauregard Bryan* and *R. V. Bowden,* for appellee.

JAMES, CHIEF JUSTICE.—Barrett sued appellant for damages sustained while in the employ of appellant as an apprentice to the boiler maker in the shops at Douglas, Arizona, while engaged in cutting rivets from an old boiler and using a side-set while his co-worker struck it with a sledge hammer, and thereby causing a piece of metal to fly off the side-set, which put out his left eye. A side-set is a tool made purposely to cut rivets off boilers. The head of a rivet projects beyond the side, and the side is held by hand and set is put upon the rivet and is struck by a sledge hammer which cuts it off after a number of blows.

The petition alleged: "That plaintiff while holding said side-set as such apprentice was acting with due caution and was in the usual place occupied by said workers as himself in said work; that plaintiff says and charges that the set used on said October 19, 1904, from which said sliver and piece of steel flew off and put out his eye was battered down and it had been used for some time and was of a material and texture inferior to the kind that should have been used in making sets, and was wholly unfit for the purpose for which it was being used at the time; but plaintiff was not informed and did not know of the kind and character of the material used in making said side-set until after the accident to his left eye; that the defendant railroad company did know that said set was of inferior material and would after use throw off slivers of pieces when being violently struck, or should have known this fact by the use of ordinary care and diligence; that defendant was careless and negligent in supplying him with said set to work with, because the same was friable and of faulty and bad material, and that the faulty, bad and inferior material of which said set was made was known to defendant and its dangerous character and unfitness for use was known to the defendant, or could have been known to defendant by the use of ordinary care and diligence on the part of the said defendant."

Defendant answered by general denial; that at the time plaintiff was injured the common law was in force in Arizona and that under it plaintiff's injury, if caused by the negligence of anyone was caused by the negligence of his fellow servant, and alleging that no such fellow servant statute as exists in Texas existed in Arizona, and that his injury was caused by his own negligence and that he assumed the risk. And further that the occurrence was an unavoidable accident and could not have been foreseen.

Plaintiff recovered a judgment for $3,500.

The court refused to suppress the deposition of Herbert Athons, and this is the subject of the first assignment of error. A commission was issued to take the deposition of this witness upon an agreement waiving time and providing that such commission might issue and that any officer might take his deposition, wherever he might be found and before any officer authorized by the laws of Texas. It was taken by a

notary public at Los Angeles, California, the following being the caption and certificate of said officer to said deposition:

CAPTION: "In the 41st District Court sitting at El Paso, Texas, No. 5454. E. A. Barrett, Plaintiff, v. El Paso Southwestern Ry. Co. defendant. Be it remembered that pursuant to the commission and stipulation hereto annexed, and on the 25th day of August, 1905, at Los Angeles, California, in the county of Los Angeles, State of California, before me, J. L. Murphy, a Notary Public in and for said County of Los Angeles, personally appeared Herbert Athons, a witness produced on behalf of the plaintiff in the above entitled action, now pending in the said District Court, who being first by me duly sworn was then and there interrogated by me upon the interrogatories direct and cross and answered and testified as follows:

CERTIFICATE:
"The State of California,
County of Los Angeles,

"I, J. L. Murphy, a Notary Public in and for said County, hereby certify that the witness in the foregoing deposition named Herbert Athons was by me duly sworn, that said deposition was then and there taken at my office in the city of Los Angeles at No. 202 New High Street in the City of Los Angeles, State of California, and on the 25th day of August, 1905, between the hours of ten A. M. and six P. M. of that day. That said answers to said interrogatories direct and cross were reduced to writing by me and when completed was by me carefully read to said witness and being by him corrected was by him subscribed in my presence.

"In witness whereof I have hereunto subscribed my name and affixed my seal of office this 25th day of August, 1905.

> J. L. Murphy,
> Notary Public in and for the
> County of Los Angeles, State
> of California."

The act of 1905 in its article 2282 enacts that the officer taking the deposition shall give at least five days' notice in writing to the parties of time and place of taking. Its article 2284 amending original article 2284, Rev. Stats., as the caption declares, provides with particularity the mode and manner of taking and returning the answers of the witness, and provides further that parties being present may take notes, and declaring it unlawful for them to make any suggestions to the witness or officer, declaring it unlawful for the witness to use or refer to any memorandum or writing except such as he would be permitted to use under the rules of evidence if testifying in court, which memoranda or writing shall be identified, attached and returned by the officer with the answers, and provides further "that if at any time after said deposition has been filed it shall be made to appear that any of the provisions of this article have been violated such deposition shall be suppressed at the cost of the party guilty of such violation."

The right to suppress at any time under article 2284 exists only in reference to violations of its own provisions, and therefore the failure to give five days notice, which is not one of its provisions, does not come within the class.

There are many other objections which go to the form and manner of taking a deposition, not dealt with by said article 2284; for example, objections to answers because not responsive; to questions because leading. To such objections original article 2289 undoubtedly still applies. The latter article was left unrepealed, and it was the intention of the Legislature that it should remain in force, except where its provisions are in conflict and irreconcilable with the provisions of said article 2284, and therefore insofar as they can, consistently with the legislative intent gathered from article 2284, stand together, effect should be given article 2289.

The article 2284 of the Act of 1905 is significant in providing: "That if at any time after said deposition has been filed it shall be made to appear that any of the provisions of this article have been violated such deposition shall be suppressed at the cost of the party guilty of such violation." The whole of this provision must be considered in construing it. It indicates from it that it was not intended to apply to all violations of the article, because it provides for suppression for violations that are made to appear, and of which a party is guilty. In the present instance the violations of the article were in no wise chargeable to any party, but were the acts of the officer. And they appear from the face of the deposition and were not such as would have to be made to appear. Due regard to the language quoted suggests that the right of a party to suppress *at any time* was intended only for cases of violation committed by a party, which would naturally not be disclosed in the deposition itself, nor be discovered with readiness, and which would have to be established by evidence in order to be made to appear. We think it was not intended to so change the law as to permit a party, where the violation is the act of the notary or apparent upon his certificate, to suppress the deposition, without reference to time, which would mean that he could do so even at the trial, as was done in this case. We conclude that the objections to the deposition were controlled by article 2289.

In connection with the second assignment appellant states in propositions that the court erred in not suppressing the said deposition, but whether it did or not, the application for continuance ought to have been granted as defendant did not know of its existence and the court should have granted time to enable defendant to procure testimony to meet the testimony of the witness. At the time the deposition was taken the law of 1905 had just gone into effect. The five days notice was not given by the officer. Interrogatories were crossed and the commission issued under agreement of counsel as follows: "Time, service of copy, and filing of foregoing interrogatories hereby waived, and commission may issue at once to take said deposition wherever said witness may be found, before any officer authorized under the laws of Texas to take such deposition." The deposition was returned and filed in the District Clerk's office September 1, 1905. The bill shows that it was taken out by appellee's counsel on September 9,

and kept by them until the trial, June 8, 1906. The bill shows "that the filing of the deposition on September 1 was noted at the time by the clerk of the court upon the proper docket, and when said deposition was taken by plaintiff's counsel from the clerk's office on September 9, 1905, such taking was receipted for by plaintiff's counsel upon the proper docket." The bill further shows that on June 6, prior to the announcement of ready, there was inserted (presumably with consent or knowledge of appellant's counsel) by interlining in the petition the words: "That said notification was given to defendant's agents and employees A. Struthers and M. Drumy," thereby alleging that the notice of the unfit and dangerous character of the side-set was given defendant's agents.

The application for continuance was made after the court refused to suppress and was to acquire an opportunity to meet the testimony of Athons contained in said deposition, defendant not knowing of the existence of said deposition and therefore not prepared to meet the evidence contained therein. The petition very clearly alleged the defective composition of the side-set. Defendant was in no position to claim that it did not know of this issue, and claim, because it was unprepared with testimony to meet the issue, it should have a continuance. That defendant did not know of the existence of Athons' deposition tending to prove such issue, would not help the matter, because defendant must at all times have anticipated proof of the allegations of the petition, and was in no better position to ask for a continuance than it would have been had Athons been unexpectedly produced in person as a witness. In no event could defendant claim to have been surprised by the production of testimony adduced to prove plaintiff's allegations.

The suppression of the deposition was asked upon the grounds which went only to the manner and form of taking. The bill of exceptions shows that all that was presented to the court upon that hearing was the caption and the certificate to the deposition, and the agreement concerning the issuance of the commission. The position of appellant upon the motion was that the Act of 1905 gave it the right at any time even after trial begun, to suppress. This the court overruled, we think correctly, for the reasons above given. We observe that in ruling on the motion to suppress, it was evidently not contended that for equitable reasons arising from the conduct of appellee's counsel in regard to taking out and withholding the deposition appellant was entitled to move to suppress during the trial. Such a matter might have been available in suppressing this deposition at that time, but it was not asserted in suppression of it, appellants apparently being confident of their position that the statute of 1905 covered the case and entitled them to move to suppress it at any time.

There being, as we believe, no error committed in not suppressing the deposition upon the grounds asked, we think that defendant was not entitled to demand a continuance because unprepared to meet testimony which went to establish the issue alleged in the petition, whether that testimony was given in the deposition complained of, or had been otherwise produced.

The third assignment is that the court erred in overruling the motion

for a new trial on the ground of newly discovered testimony, to-wit: that of P C. Clark. It appears that Athons testified in his deposition that the side-set in question was composed of steel too hard for such a tool, and that he knew this fact because when plaintiff was injured he brought it into the blacksmith shop where witness was at work and he then saw it and examined it. Clark's affidavit presented with the motion was that the side-set was dropped by plaintiff as soon as he was hurt and that it was not taken to the blacksmith shop but that 20 or 30 minutes after the accident he saw it in the office, and that he thought he gave Murphy the side-set after witness came back from the blacksmith shop where he and Barrett went just after the accident. Murphy was a witness in the case for defendant and his testimony went to show that Clark picked the side-set up near the boiler and handed it to him, Murphy, and that he, Murphy, took it to the master mechanic's office. Thus this testimony of Clark would have been cumulative.

It appears also that Clark remained in appellant's employ more than ten months after the injury, and nine months after this suit was instituted. He left its employ August 28, 1905. The deposition of Athons was filed September 1, 1905. Counsel for defendant made affidavit that about six months before the case was set for trial (it was tried in June, 1906), they began to make search for Clark and diligently searched for him from that time on and did not succeed in locating him until after eleven jurors had been empanelled to try the case, and that immediately they telegraphed Clark at Tucson, Arizona, urging him to come to El Paso to testify at the trial, that he did come but arrived the day after the trial; "that said Clark was the only one who witnessed the accident, that defendant's counsel neither knew, nor had any reason to believe that plaintiff would claim that the side-set was ever removed by plaintiff and said Clark from where they had been using it, or taken to the blacksmith shop and shown to Athons; that said Clark by his affidavit attached swears that it was not taken away from the place where it was used and was not taken by him or plaintiff to the blacksmith shop, or away from the boiler shop or shown to Athons, that said Clark has not been in the employ of defendant since long prior to the time the deposition of Athons was taken, that said Clark left Douglas prior to the time said deposition was filed in the clerk's office and defendant and its counsel have used every effort and all diligence to locate said Clark, but with the result above stated; that while defendant and its counsel never knew, or had any reason to believe that plaintiff would claim that said Athons had seen the side-set as above stated, yet defendant and its counsel endeavored to find said Clark for the purpose of procuring his testimony as to how the injury to plaintiff occurred and for the purpose of ascertaining the facts in reference to the accident complained of; that because of the inability of defendant and its counsel to find Clark they were unable to know until after the trial, and did not know until then, what Clark would testify to, and said Clark being the only person other than plaintiff who was present when plaintiff was injured, is the only witness by whom the facts set forth in his affidavit could be proved."

There was no substantial difference in plaintiff's statement and that in the affidavit of the proposed witness as to how the accident occurred,

the point of difference in their testimony being as to whether or not the side-set was taken to the blacksmith shop where Athons says he saw and examined it. As to this fact defendant had a witness Murphy whose testimony went to contradict plaintiff in this matter and to prove what Clark would have testified to.

We recognize that the fact that Clark's testimony would have been cumulative was of itself not an insuperable reason for refusing a new trial. Nor is it necessary for us to hold that appellant failed to show sufficient diligence in respect to getting the testimony of Clark. It would seem however that this was so, because the deposition of Athons was filed in the clerk's office three months before defendant began to make efforts to find Clark. The fact that after the deposition of Athons had been on file for nine days, it was taken out by appellee's counsel and kept until the trial, would not, we think, enable appellant to claim that it was ignorant of the existence of the deposition and therefore not aware that Athons would testify that the side-set was brought to his blacksmith shop. It was shown that the filing of the deposition was noted on the docket, and a receipt therefor left by appellee's counsel on the docket, and it would seem that appellant's counsel, knowing that a commission had issued to take the deposition, ought in the exercise of reasonable attention to the case, to be charged with knowledge of the deposition, and that a delay of some months in beginning a search for Clark, was not due diligence. Clark appears to have left appellant's service about the time the deposition was filed, when it was probably easier to trace his whereabouts than it was several months later.

However this may be, a sufficient reason for overruling the motion for a new trial, which was on the ground of newly discovered evidence, is that the testimony was not newly discovered. By that is meant testimony that comes to a party's knowledge after trial. Defendant admittedly was cognizant of Athons' deposition at the commencement of the trial and before the jury was fully selected. Its witness Murphy was on hand the day before, and from him it could have known the importance of Clark as its witness on the issue of what was done with the side-set after the injury. It certainly had that knowledge when Murphy gave his testimony. And yet instead of asking leave to withdraw its announcement of ready and to ask for a continuance for the purpose of securing Clark or his testimony, it was satisfied to proceed with the trial, with the testimony of Murphy on the subject and some inconsistencies in plaintiff's testimony, and take its chances of a verdict. Dotson v. Moss, 58 Texas, 152; City of Antonio v. Kreusel, 17 Texas Civ. App. 594; Fisk v. Holden, 17 Texas 408.

The fourth assignment of error is that under the evidence a peremptory charge in favor of defendant should have been given. We think this assignment not well taken.

The fifth assignment is overruled. The sixth assignment also. Under the latter there is a proposition in respect to which we may state that the testimony was not such as made it appear conclusively that defendant's negligence was not a cause of plaintiff's injury. We overrule the eighth assignment of error perceiving no error in the charge complained of. The evidence was that the person mentioned in the charge complained of by the eighth assignment was defendant's vice-principal, hence we

overrule that assignment. The ninth assignment is overruled because the matter mentioned in the special instruction was sufficiently covered in the main charge and also defendant's special charge No. 14 which was given. The same with regard to the tenth and eleventh. The twelfth is not well taken because the requested charge assumed that the blacksmith's act in not tempering the side-set was an act of negligence. And even if such act of the blacksmith had been negligence of a fellow-servant, still the charge would have been improper. Texas & Pac. Ry. v. Kirk, 62 Texas, 233. The main charge sufficiently dealt with the subject of, and rendered it proper to refuse, the special instructions referred to in the fifteenth assignment. Athons' testimony leaves no foundation for the eighteenth assignment. The nineteenth is without any proposition. The twentieth is wholly untenable.

The thirteenth assignment is that the court refused to give a charge on unforeseen accident. The charge was: "if you believe from the evidence that plaintiff's injury resulted from an accident which could not have been foreseen by defendant by the use of ordinary care, then your verdict will be for defendant." The injurious, proximate and natural consequences of an act of negligence are always deemed to be foreseen.

The main charge sufficiently covered the subject referred to by the fourteenth assignment.

We think no error was committed in the matter pointed out by the sixteenth assignment.

The seventeenth complains of this portion of the charge: "and in estimating his damages you will take into consideration the mental and physical pain suffered by him in consequence of his injury, and if you believe from the evidence that in consequence of his injury he has heretofore lost time you will take that into consideration in estimating his damages and you will allow him the reasonable value of the time so heretofore lost by him up to the present time, if any, in consequence of his injuries," etc. It is claimed that this was improper because the petition had no allegation of loss of time. It has been uniformly held in cases of alleged total disability, that loss of time may be proved without specific allegation. San Antonio & A. P. Ry. v. Wood, 92 S. W. Rep. 259; Knittel v. Schmidt, 16 Texas Civ. App., 10; General Elec. Co. v. Murray, 74 S. W. Rep. 50. We cannot see upon principle why this is not so in cases of alleged partial disability, where loss of time is an ordinary and natural incident. Watson on damages, §492. Judgment affirmed.

*Affirmed.*

JAMES, Chief Justice.—Having omitted in the opinion to dispose of the seventh assignment of error, we here do so by stating that the testimony was not such as demanded a verdict for defendant in response to the charge mentioned in the assignment.

Writ of error refused.